UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANNA HOUSSER,

        Plaintiff,

    -vs-         13-CV-1133-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

_____

APPEARANCES: CLARK JORDAN PEZZINO (MELISSA PEZZINO, ESQ., of Counsel),
       Buffalo, New York, for Plaintiff.

       WILLIAM J. HOCHUL, JR., United States Attorney (BENIL
       ABRAHAM, Special Assistant United States Attorney, of Counsel),
       Buffalo, New York, for Defendant.

   This matter has been transferred to the undersigned for all further proceedings, by order of Chief United States District Judge William M. Skretny dated October 2, 2014 (Item 14).

   Plaintiff Anna Housser initiated this action on November 19, 2013, pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") benefits under Title XVI of the Act. Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (*see* Items 8, 11). For the following reasons, plaintiff's motion is denied, and the Commissioner's motion is granted.

## BACKGROUND

Plaintiff was born on March 13, 1958 (Tr. 46, 153).[1]  She protectively filed an application for SSI on March 10, 2010, alleging disability due to knee injury, back injury, and depression, with an onset date of June 14, 2009 (Tr. 153-56, 173).  The application was denied administratively on July 9, 2010 (Tr. 71-74).  Plaintiff requested a hearing, which was held on June 21, 2012, before Administrative Law Judge (ALJ) William E. Straub (Tr. 41-63).  Plaintiff appeared and testified at the hearing, and was accompanied by non-attorney representative Lisa Falkowski.

On July 9, 2012, ALJ Straub issued a decision finding that plaintiff was not disabled within the meaning of the Act  (Tr. 14-26).  Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. § 416.920), the ALJ found that plaintiff's physical impairments (identified as status post right knee meniscal repair; degenerative disc disease with low back pain and chronic neck pain; and status post trigger finger and cubital tunnel releases; (Tr. 19)), while "severe," did not meet or medically equal the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 21), and that plaintiff's mental impairments (identified as somatoform disorder, depression, post-traumatic stress disorder, and substance abuse), considered singly and in combination, were "nonsevere" because they caused no more than minimal limitation in the ability to perform basic mental work activities (Tr. 19-21).  The ALJ discussed the evidence in the record regarding plaintiff's medically determinable impairments–including reports and opinions from treating and consultative medical sources, and plaintiff's hearing

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 8).

testimony and statements about the limiting effects of her impairments–and determined that plaintiff had the residual functional capacity ("RFC") to perform light work, limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling (R. 21-25).[2] Given this functional capacity assessment, and considering plaintiff's statements about the exertional requirements of her former job as a machine operator in a factory, the ALJ determined that plaintiff could not perform her past relevant work (Tr. 25). Considering plaintiff's age (51 years at the time of application), education (at least high school), work experience, and RFC (with limitations), and using Rule 202.13 of the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids"), as a framework for decision-making, the ALJ determined that plaintiff could make a successful adjustment to other work that exists in the national economy, and therefore she has not been disabled within the meaning of the Act at any time since March 10, 2010, the date her SSI application was protectively filed (Tr. 26).

The ALJ's decision became the final decision of the Commissioner on September 30, 2013, when the Appeals Council denied plaintiff's request for review (Tr. 1-3), and this action followed.

In her motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because the ALJ erred in his assessment of (1) plaintiff's RFC, (2) the severity of plaintiff's mental impairments, and (3)

---

[2]Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R.§ 416.967(b). Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves mostly sitting with some pushing and pulling of arm or leg controls. To be capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. If someone can do light work, then she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods. *Id.*

the credibility of her testimony and statements regarding the limiting effects of pain and other symptoms. *See* Items 8-1, 12. The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence. *See* Item 11-1.

## DISCUSSION

I.    **Scope of Judicial Review**

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the

conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards."  *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *see also Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773).  "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations."  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).  Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence.  *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations...."); *see Kohler*, 546 F.3d at 265.  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner."

*Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it.  *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013).  "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying.  *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.     Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …."   42 U.S.C.

§ 423(d)(2)(A); *see also* 20 C.F.R. § 416.905(a).  As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R. § 416.920.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …."  20 C.F.R. § 416.920(c); *see also* § 416.909 (duration requirement).  If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work.  If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show

that there exists work in the national economy that the claimant can perform. *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience."  *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted).  If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …."  *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' "  *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

## III.    The ALJ's Disability Determination

In this case, ALJ determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since March 10, 2010, the protective filing date (Tr. 19).  At steps two and three, as outlined above, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals the severity of any of the impairments in the Listings, specifically considering the criteria under Listings 12.00 (Mental Disorders) and 1.00 (Disorders of the Musculoskeletal System) (Tr. 19–21).  Before proceeding to step four, the ALJ discussed the medical evidence of record, including the reports and opinions of treating and consultative medical sources, and found

that plaintiff had the RFC for light work limited by her ability to only occasionally climb, balance, stoop, kneel, crouch and crawl (Tr. 21). The ALJ also discussed plaintiff's hearing testimony and statements of record regarding the effects of her pain and other symptoms on her ability to carry out daily living and work-related activities, and found that while plaintiff's medically determinable impairments could reasonably be expected to cause the pain and symptoms alleged, her statements concerning the intensity, persistence, and limiting effect of her symptoms were not credible to the extent they were inconsistent with the restrictions outlined in the ALJ's RFC assessment (Tr. 21-22). Based on this assessment, and "[g]iving the claimant the benefit of the doubt" with respect to her statements of record concerning the exertional requirements of her former job as a factory worker, the ALJ found at step four of the sequential evaluation that plaintiff would be unable to perform her past relevant work (Tr. 25). Accordingly, at step five, the ALJ considered plaintiff's age, education, work experience, and RFC in conjunction with the framework of Rule 202.13 of the Grids (directing a finding of "not disabled"), and determined that plaintiff could make a successful adjustment to the work-related functional requirements of other jobs that exist in significant numbers in the national economy (Tr. 25-26).

## IV.    Plaintiff's Motion

### A.    RFC Assessment

Plaintiff first contends that the ALJ's RFC assessment is not based on substantial evidence because there is no opinion from a medical source, or any other objective

medical evidence in the record, to support the ALJ's finding that plaintiff can perform light

work.  As explained in the Social Security regulations and rulings:

> RFC is what an individual can still do despite his or her limitations.  RFC is
> an administrative assessment of the extent to which an individual's medically
> determinable impairment(s), including any related symptoms, such as pain,
> may cause physical or mental limitations or restrictions that may affect his or
> her capacity to do work-related physical and mental activities.  Ordinarily,
> RFC is the individual's maximum remaining ability to do sustained work
> activities in an ordinary work setting on a regular and continuing basis, and
> the RFC assessment must include a discussion of the individual's abilities on
> that basis.  A "regular and continuing basis" means 8 hours a day, for 5 days
> a week, or an equivalent work schedule.  RFC does not represent the least
> an individual can do despite his or her limitations or restrictions, but the most.
> RFC is assessed by adjudicators at each level of the administrative review
> process based on all of the relevant evidence in the case record, including
> information about the individual's symptoms and any "medical source
> statements" – *i.e.*, opinions about what the individual can still do despite his
> or her impairment(s) – submitted by an individual's treating source or other
> acceptable medical sources.

Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, *2 (July 2, 1996); *see also* 20

C.F.R. § 416.945(a)(1).  When making an RFC assessment, the ALJ should consider "a

claimant's physical abilities, mental abilities, symptomology, including pain and other

limitations which could interfere with work activities on a regular and continuing basis."

*Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009); *see also Stanton v. Astrue*,

2009 WL 1940539, *9 (N.D.N.Y. 2009) ("To determine RFC, the ALJ must consider all the

relevant evidence, including medical opinions and facts, physical and mental abilities,

non-severe impairments, and [p]laintiff's subjective evidence of symptoms."), *aff'd*, 380 F.

App'x 231 (2d Cir. 2010); *see* 20 C.F.R. § 416.945(b)-(e).

   As this court has recently recognized, "it is not *per se* error" for an ALJ to make the

RFC determination absent a medical source assessment as to what the claimant can still

do despite the limitations caused by his or her impairments. *Lewis v. Colvin*, 2014 WL 6609637, at *6 (W.D.N.Y. Nov. 20, 2014) (citing *Tankisi v. Commissioner of Social Security*, 521 F. App'x 29, 34 (2d Cir. 2013).   Rather, as noted in *Tankisi*, the lack of a medical source assessment of RFC does not render the ALJ's conclusions defective "where, as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity."  521 F. App'x at 34 (citing cases form the Third, Ninth, and Fifth Circuits); *see also Walker v. Astrue*, 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010) (" '[W]here the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment.' ") (quoting *Manso–Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996)).

The court's review of the ALJ's findings in this case reveals substantial compliance with these requirements.  For example, the ALJ discussed the report and opinion of Dr. Donna Miller, who performed a consultative internal medicine examination of plaintiff on June 24, 2010 (Tr. 23;   252-56); *see Smith v. Colvin*, 17 F. Supp. 3d 260, 268-69 (W.D.N.Y. May 1, 2014) (opinions of consultative medical examiners "may constitute substantial evidence if they are consistent with the record as a whole.") (citing cases, regulations, and rulings).  Plaintiff reported chronic pain in her right knee and lower back from injuries sustained in a motorcycle accident on June 14, 2009.  Upon examination of plaintiff's musculoskeletal system, Dr. Miller reported full bilateral flexion, extension, lateral flexion, and full rotary movement of the cervical spine; no scoliosis, kyphosis, or abnormality in the thoracic spine; and flexion to 45 degrees, lateral flexion to 25 degrees,

and rotation to 30 degrees in the lumbar spine (Tr. 254).  Straight leg raising was negative, and there was full range of motion in the shoulders, elbows, forearms, and wrists (*id.*).  Dr. Miller noted some limitation in range of movement of the hip; right hip adduction was 15 degrees, and left hip adduction was 20 degrees, but all other hip range of movement was full  (*id.*).  Flexion and extension of the right knee was to 120 degrees and left knee to 150 degrees, with full range of motion in the ankles (Tr. 254-55).   There were no evident subluxations, contractures, ankylosis, or thickening (Tr. 255).  Plaintiff's joints were stable and nontender and there was no redness, heat, swelling, or effusion (*id.*).  On neurological examination, Dr. Miller reported that plaintiff's deep tendon reflexes were physiologic and equal in the upper and lower extremities, there was no sensory deficit, and strength was 5/5 in the upper and lower extremities (Tr. 255).   An MRI of the right knee, taken in conjunction with the examination, was negative (Tr. 257).   Based on the results of her consultative examination, Dr. Miller's diagnosis was chronic right knee pain status post right meniscal repair; chronic low back pain; right ankle tendonitis; and substance abuse. Prognosis was reported as fair.  Dr. Miller expressed the opinion in her "Medical Source Statement" that plaintiff "has mild limitation to repetitive bending, turning, twisting, lifting, carrying, and kneeling" (Tr. 255), to which the ALJ accorded "[s]ignificant weight … as it is consistent with the examination" (Tr. 25).

The ALJ also discussed the reports and opinions of Dr. Andrew Cappuccino, an orthopedic surgeon at Buffalo Spine Surgery, who saw plaintiff on June 28, 2010 for evaluation of possible surgical intervention to address her neck and lower back pain (Tr. 24-25; 318-19).  X-rays revealed mild decrease in disc space height at L4-L5 and L5-S1, but no obvious deformities, fractures, or dislocations (Tr. 319).  Dr. Cappuccino prescribed

a short course of pain medication, ordered an MRI of the lower back and thoracic spine, and referred plaintiff for pain management and physical therapy.  According to Dr. Cappuccino, plaintiff "remains at this point with an ongoing temporary marked degree of disability causally related to her lower back injuries sustained from her accident on June 14, 2009" (*id.*).  Upon follow-up evaluation on March 10, 2011, plaintiff's reported ongoing neck and back pain, with no improvement from interventional injections, physical therapy, or chiropractic manipulation.  MRIs revealed evidence of C5-C6 disc protrusion; low-grade disc dessication at L2-L3; and "fairly significant collapse and disc dessication" at L5-S1 (Tr. 322).  On examination, Dr. Cappuccino noted that plaintiff ambulated freely, her station was steady, motor strength was good, and there were no focal deficits (Tr. 323).  Plaintiff's reflexes were two-plus and symmetrical in the patellas and one-plus and symmetrical in the Achilles (*id.*).  Dr. Cappuccino reiterated his opinion that plaintiff remained "with an ongoing marked degree of disability possibly related to her cervical and lower back injuries" (*id.*).  He recommended continued conservative treatment "for as long as possible," with follow-up as needed (*id.*).

The ALJ noted that, while Dr. Cappuccino found a "marked degree of disability," neither he nor any other medical source indicated that plaintiff was unable to work, or that she had any specific work-related functional limitations (Tr. 25).  The ALJ therefore relied on the consultative examiner's opinion that plaintiff had only mild limitations with respect to repetitive bending, turning, twisting, lifting, carrying, and kneeling to reach the conclusion that plaintiff retained functional capacity for a range of light work, limited by her ability to occasionally climb, balance, stoop, kneel, crouch, and crawl.  In the court's view, this conclusion reflects a commonsense judgment about what plaintiff could still do despite the

limitations caused by her impairments, based on substantial evidence in the case record and rendered in accordance with the legal standards governing the administrative assessment of a claimant's residual functional capacity.

Accordingly, plaintiff is not entitled to reversal or remand based on the ALJ's RFC assessment.

## B.    Severity of Mental Impairments

Plaintiff also contends that the ALJ failed to properly assess the severity of plaintiff's mental impairments.   In this regard, the regulations require the ALJ to use a "special technique" at steps two and three of the sequential evaluation to evaluate the severity of a medically determinable mental impairment.   20 C.F.R. § 416.920a(a).  As explained by the Second Circuit:

> This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment." § 404.1520a(b)(1).  If the claimant is found to have such an impairment, the reviewing authority must "rate the degree of functional impairment resulting from the impairment(s) in accordance with paragraph (c)," § 404.1520a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  § 404.1520a(c)(3).  According to the regulations, if the degree of limitation in each of the first three areas is rated mild or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits.   § 404.1520a(d)(1).   If the claimant's mental impairment is severe, the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. § 404.1520a(d)(2).  If so, the claimant will be found to be disabled.  If not, the reviewing authority will then assess the claimant's residual functional capacity.  § 404.1520a(d)(3).

*Kohler v. Astrue*, 540 F.3d 260, 265-66 (2d Cir. 2008); *see also Petrie v. Astrue*, 412 F. App'x 401, 408 (2d. Cir. 2011); 20 C.F.R. § 416.920a(b)(1), (b)(2), (c)(3), (d)(1)-(3).

The regulations also require that the application of the special technique be documented. *Kohler*, 540 F.3d at 266 (citing 20 C.F.R. § 404.1520a(e)).  Generally, the documentation is provided by a standard document known as a "Psychiatric Review Technique Form" ("PRTF"), which is ordinarily completed at the administrative review level by a medical or psychological consultant.  *Id.*  Pursuant to the regulations, the ALJ's written decision must "reflect application of the technique, and ... 'include a specific finding as to the degree of limitation in each of the [four] functional areas.' "  *Id.* (quoting 20 C.F.R. § 404.1520a(e)(2)).

In this case, ALJ Straub found that plaintiff's medically determinable mental impairments (somatoform disorder, depression, post-traumatic stress disorder, and substance abuse), considered singly or in combination, were "nonsevere" since they did not cause more than minimal limitation of plaintiff's ability to perform basic mental work activities (Tr. 19).  The ALJ's written determination reflects that, in reaching this conclusion, he considered the four broad functional areas, as reported by plaintiff in her hearing testimony and benefit application materials, and as documented by the June 24, 2010 report of examining consultative psychologist Renee Baskin, Ph. D. (*see* Tr. 246-50), and a PRTF completed on July 8, 2010 by reviewing psychologist T. Andrews (*see* Tr. 258-70).  The ALJ made specific reference to this testimony and documentation in finding that plaintiff had no limitations in the areas of activities of daily living and social functioning; mild limitation of concentration, persistence, or pace; and no episodes of decompensation of an extended duration (Tr. 19-20).  In the court's view, this assessment is in compliance with the "special technique" requirements outlined in the regulations and, as revealed by

the court's review of the referenced testimony, consultative reports, and other documentation relied upon by the ALJ, is supported by substantial evidence of record.

For her part, plaintiff refers to the October 27, 2010 report of Mental Health Counselor Pamela S. Gefell, M.A., indicating that plaintiff exhibited certain "marked" restrictions in the first three broad areas of functioning (*see* Tr. 277-81); and the reports of psychiatrist Wendy Weinstein, M.D., who saw plaintiff on several occasions between January and September 2011 for treatment of ongoing symptoms of depression (*see* Tr. 408-15).  According to plaintiff, the information in these and other reports in the record provides substantial evidence to support a finding that her mental impairments have more than a minimal impact on her ability to engage in basic work activities.  However, the court's review of these reports reveals no specific findings with regard to plaintiff's ability to perform basic mental work activities to contradict the ALJ's "nonsevere" determination, and in any event, even if such information creates a genuine and substantial evidentiary conflict, it is for the Commissioner, not the reviewing court, to resolve.  *Veino*, 312 F.3d at 588; *Marquez*, 2013 WL 5568718, at *7.

Based on this review, and upon consideration of the record as a whole, the court finds that the ALJ's assessment of the severity of plaintiff's mental impairments was accomplished in accordance with the "special technique" requirements outlined in the regulations, and is otherwise free of legal error and supported by substantial evidence. Accordingly, plaintiff is not entitled to remand or reversal on this ground.

### C.    Credibility

Finally, plaintiff contends that the ALJ failed to properly assess the credibility of plaintiff's testimony and statements regarding the effect of her physical impairments on her ability to perform work-related activities.  The general rule in this regard is that the ALJ is required to evaluate the credibility of a claimant's testimony or statements about his or her impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged.  *See Paries v. Colvin*, 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) ("Where there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings.")).   The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant.  Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms.  If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005), *quoted in Hogan v. Astrue*, 491 F. Supp. 2d 347, 352 (W.D.N.Y. 2007); *see* 20 C.F.R. § 416.929.

The regulations outline the following factors to be considered by the ALJ in conducting the credibility inquiry: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the symptoms; (5) any treatment, other than medication, that the claimant has received; (6)

any other measures that the claimant employs to relieve the symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the symptoms.  20 C.F.R. § 416.929(c)(3) (i)-(vii); *see also Meadors v. Astrue*, 370 F. App'x 179, 184 n. 1 (2d Cir. 2010).  The Commissioner's policy interpretation ruling on this process provides further guidance:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility.  The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.  It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Social Security Ruling ("SSR") 96–7p, 1996 WL 374186, at *4 (S.S .A. July 2, 1996).

In this case, the ALJ found that plaintiff's medically determinable physical impairments could reasonably be expected to cause the pain, stiffness, numbness, and other symptoms alleged, but that her statements about the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they could be considered inconsistent with the ALJ's RFC assessment (Tr. 22).  In reaching this determination, the ALJ discussed plaintiff's statements in her SSI application and hearing testimony regarding her activities of daily living, the intensity and duration of her back and neck pain, and the extent to which her pain and other symptoms caused functional limitations (Tr. 22), but found plaintiff's testimony and statements inconsistent with medical evidence of record (*see* Tr. 25).  In this court's view, and as substantiated by the discussion above with

respect to the ALJ's consideration of the objective medical evidence in assessing plaintiff's RFC for light work with specified exertional limitations, the ALJ's credibility determination is sufficiently grounded in the evidence and articulated in the written determination to make clear to plaintiff, to this court, and to subsequent reviewers the weight given to plaintiff's statements about her functional limitations, and the reasons for that weight. As such, and upon review of the record as a whole, the court finds that the ALJ's credibility assessment in this case was performed in accordance with the requirements of the Social Security Act, its implementing regulations, and the weight of controlling authority.

Accordingly, plaintiff is not entitled to reversal or remand on this ground.

## **CONCLUSION**

For the foregoing reasons, the court finds that the ALJ's decision in this case is based on correct legal standards and supported by substantial evidence, and the Commissioner's determination must therefore be upheld.  Accordingly, plaintiff's motion for judgment on the pleadings (Item 8) is denied, the Commissioner's motion for judgment on the pleadings (Item 11) is granted, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:  January 7, 2015
p:\pending\2013\13-1133.ssa.dec15.2014

-19-